Filed 7/31/26  P. v. Palomino CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B341661 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. XCNBA468876 |
| v. | |
| MARCOS PALOMINO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Zachary John Crvarich, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

A jury convicted defendant and appellant Marcos Palomino of murder and two counts of unlawful possession of a firearm by a felon. On appeal, Palomino argues the court erred by denying his counsel's motion to withdraw on the eve of trial. Palomino also argues counsel provided ineffective assistance by failing to move to sever the unlawful possession charges from the murder charge. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

The People charged Palomino with the first degree murder of Jose Luis Lopez (Pen. Code, § 187, subd. (a))[1], unlawful possession of a firearm by a felon on June 5, 2018 (§ 29800, subd. (a)(1)), and unlawful possession of a firearm by a felon on June 14, 2018 (*ibid.*). The People alleged various firearm enhancements on the murder charge.

At trial, the People presented evidence that Palomino, Lopez, and a juvenile were driving in a stolen car the night of June 5, 2018. All three were members of the Laguna Park gang. Surveillance cameras captured video of Palomino, Lopez, and the juvenile getting out of the car and walking down an alley around 11:00 p.m. The alley was in an area claimed by a rival gang called White Fence.

A video of the alley showed Palomino holding an object near his waist. Two police officers testified the object appeared to be a handgun; however, they disagreed about its apparent caliber. The videos captured two muzzle flashes and the sound of six gunshots. After the shots, Palomino and the juvenile ran to the stolen car and drove off together.

---

[1]      Statutory references are to the Penal Code.

2

Lopez suffered four gunshot wounds, including fatal wounds to his head and torso. There was stippling on Lopez's skin, indicating he was shot from close range. A medical examiner testified it was possible Lopez was struck by bullets while on the ground.

At the scene of the shooting, police found six spent nine millimeter cartridges. A criminalist determined the same gun fired all six. Bullets found inside Lopez's body were consistent with having been fired by a nine millimeter firearm. Police also found in the area of the shooting a magazine containing .22 caliber ammunition.

The police tracked Palomino and the juvenile to a motel, where they were sharing a room. The morning of June 14, 2018 —nine days after the shooting—an officer saw Palomino get into the backseat of a ride share car. Police pulled over the car and searched it. Officers found a .45 caliber handgun in the pocket on the back of the seat directly in front of where Palomino was sitting. The ride share driver testified the gun was not his, the gun was not in the car when he searched it the night before, and Palomino was his first customer of the day.

The police arrested the juvenile near the motel room. Inside the room, officers found a loaded nine millimeter firearm. The police tested the firearm and determined it was not involved in Lopez's killing.

The police interviewed Palomino while he was in custody. Palomino admitted driving to the alley with Lopez and the juvenile. Palomino denied having a gun. He said someone came up behind Lopez in the alley. Palomino heard gunshots and started running. He thought it might have been members of the White Fence gang who attacked the group and shot Lopez.

While in custody, Palomino made a phone call in which he suggested the juvenile "take[ ]" the fall because, as a juvenile, he would get out of prison at age 25.

The jury convicted Palomino as charged and found true the firearm enhancements, including the allegation that Palomino personally and intentionally discharged a handgun that caused death (§ 12022.53, subd. (d)). The court sentenced Palomino to 25 years to life for first degree murder, plus a consecutive 25 years to life for the firearm allegation. The court selected the middle term of two years on each unlawful possession conviction, which it ran concurrent to the term on the murder conviction.

Palomino timely appealed.

## DISCUSSION

### 1. *The trial court did not abuse its discretion by denying defense counsel's motion to withdraw*

Palomino argues the trial court erred by denying his counsel's motion to withdraw from the case due to a conflict.

a. *Background*

Attorney Nicholas Rosenberg represented Palomino at trial. Palomino retained Rosenberg sometime around September 2022. Rosenberg and the prosecutor announced they were ready for trial on August 14, 2023.

At a hearing on August 25, 2023—the day trial was set to begin—attorney Stephen Kahn appeared and asked the court to substitute in as counsel for Palomino. Palomino told the court he was in favor of the substitution. Kahn said he was not ready to proceed with trial, as he had a full schedule and had not yet discussed the specifics of the case with Palomino. The prosecutor opposed the substitution, noting it would likely delay trial until sometime in 2024.

4

The court denied the request as untimely. The court noted it appeared Palomino was simply unhappy with the People's final plea offer and wanted to see if new counsel could do better. The court also noted substitution of counsel at this stage would result in an unreasonable disruption in the proceedings, which already had been going on for five years.

Later that day, Palomino's counsel moved to withdraw, citing a conflict of interest. Counsel said there "has arisen a situation which I believe has ripened into an actual conflict of interest" that "impinges on my duty of loyalty to my client as well as my duty to effectively represent him." Counsel asked the court to accept at "face value" his representations, so as to avoid "intruding into the attorney-client relationship."

The court asked counsel when the conflict developed, noting counsel had not raised it at prior hearings. Counsel replied it was an "ongoing situation" that had "ripened to the level of a conflict of interest" following a recent conversation with Palomino.

Asked for specifics about the nature of the conflict, counsel said the "attorney-client relationship has broken down" and there were issues "involving attorney fees." Counsel clarified the "paramount" or "primary" issue was the breakdown of the attorney-client relationship. Counsel said Palomino "does not intend to cooperate with my defense at trial," and there was an issue concerning whether he would testify. Counsel stated the conflict was on his end—not on Palomino's end—and it went beyond disagreements as to strategy.

The prosecutor opposed the motion. He suggested Palomino might have been purposefully refusing to cooperate with defense counsel to delay the trial so that Kahn could

substitute in as counsel.  The prosecutor expressed concern that a similar conflict would arise again if Palomino became unsatisfied with replacement counsel's defense.

Palomino personally addressed the court and said he was "not playing games" and simply did not feel "comfortable having this lawyer represent me."

The court denied counsel's motion.  The court acknowledged defense counsel could not "get specific beyond a certain point" when discussing the conflict with Palomino.  However, the court noted the issues counsel disclosed concerned disagreements about strategy and legal fees, and the attorney-client relationship could be "restored."  The court also noted the case had already been delayed for a significant amount of time.  The court stated, "in light of all these other background circumstances, it's very clear to me, . . . there's some gamesmanship at play here."  The court noted it relied on its ability to "see the parties and the interactions and the feel, the sense of what's going on here.  And I can read very, very clearly what's going on here."  The court said it would closely monitor the situation going forward and diligently address issues that might affect the fairness of the trial.

After trial, the court appointed new counsel to represent Palomino in connection with a claim of ineffective assistance of counsel.  Palomino's new counsel filed a motion for new trial on the ground that the court should have granted defense counsel's motion to withdraw before trial.  Palomino essentially repeated the arguments defense counsel had made in the original motion to withdraw.  The court denied the motion for new trial.

b.      *Analysis*

Criminal defendants have the constitutional right to assistance of counsel, which includes the right to representation free from conflicts of interest.  (*People v. Hardy* (1992) 2 Cal.4th 86, 135.)  "Conflicts of interest broadly embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or by his own interests."  (*People v. Bonin* (1989) 47 Cal.3d 808, 835.)  "Although 'most conflicts of interest seen in criminal litigation arise out of a lawyer's dual representation of co-defendants, the constitutional principle is not narrowly confined to instances of that type.'  [Citation.]  Thus, a conflict may exist 'whenever counsel is so situated that the caliber of his services may be substantially diluted.' "  (*Hardy,* at pp. 135–136.)  "The determination whether to grant or deny an attorney's motion to withdraw as counsel of record lies within the sound discretion of the trial court, having in mind whether such withdrawal might work an injustice in the handling of the case."  (*Lempert v. Superior Court* (2003) 112 Cal.App.4th 1161, 1173.)  We review a a trial court's refusal to grant a motion to withdraw for an abuse of discretion.  (*People v. Sanchez* (1995) 12 Cal.4th 1, 37, disapproved of on another point by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Palomino has not shown the court abused its discretion here.  The court's statements suggest it denied counsel's motion to withdraw because it believed Palomino was engaging in gamesmanship and any breakdown in the attorney-client relationship was reconcilable.  The record supports the court's findings, which provided sufficient grounds to deny the motion.

The California Supreme Court has stated a "defendant 'cannot simply refuse to cooperate with his appointed attorney and thereby compel the court to remove that attorney.'" (*People v. Clark* (2011) 52 Cal.4th 856, 918 (*Clark*); see *People v. Smith* (1993) 6 Cal.4th 684, 696–697 ["a defendant may not force the substitution of counsel by his own conduct that manufactures a conflict"].)  There is ample evidence that Palomino was attempting to do precisely that.  Palomino retained defense counsel sometime around September 2022, and counsel represented him without significant issue for nearly a year. According to counsel, the conflict "ripened" during a conversation with Palomino on the eve of trial, shortly after the court denied a motion to substitute counsel because it would have required a significant delay in trial.  Although counsel revealed few specifics about the nature of the conflict, he suggested the primary issue was Palomino's unwillingness to cooperate with his defense. On this record, the court reasonably could have concluded Palomino intentionally created the conflict to delay the trial and circumvent the court's order denying the request to substitute counsel.

The court also reasonably could have concluded the conflict with counsel was not irreconcilable.  Palomino's refusal to cooperate with counsel was a matter entirely within his own control.  The court reasonably could have determined he was likely to cooperate in the future—and therefore cure the conflict —once it became clear his efforts to force a substitution of counsel would not be successful.  The fact that counsel did not renew the motion during trial suggests that was the case.  Although Palomino raised the issue again in a motion for a new trial, he did not identify ways in which the conflict manifested during

trial.  Nor has Palomino done so on appeal.  On this record, the court did not abuse its discretion.  (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1086 [a court is not required to find an irreconcilable conflict exists " 'if the defendant has not made a sustained good faith effort to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness' "].)

Palomino suggests the trial court was required to accept counsel's representation of an irreconcilable conflict that mandated his withdrawal.  We disagree.  "Although counsel's evaluation of the attorney-client relationship is important [citations], it is not binding in the face of the court's own observations and appraisal."  (*Clark, supra*, 52 Cal.4th at p. 918.)  Here, the court seemed to accept counsel's representation that he had a conflict with Palomino.  However, the court was not required to accept counsel's characterization of the conflict as irreconcilable or as otherwise requiring withdrawal.  Instead, the court was free to come to its own conclusion based on its observations of the parties and their interactions, as well as the surrounding circumstances.

Palomino's reliance on *Aceves v. Superior Court* (1996) 51 Cal.App.4th 584 is misplaced.  In *Aceves*, a deputy public defender moved to withdraw because of a conflict with the defendant.  According to the deputy, the defendant made a statement that was impossible to ignore and that "caused an absolute, irretrievable breakdown in the attorney-client relationship such that no member of the public defender's office could represent" him going forward.  (*Id*. at pp. 588–589.)  The deputy said he could not provide more specific information about the conflict because it would require disclosure of confidential

information.  (*Ibid*.)  The trial court accepted the deputy's representations as honest.  However, it denied the motion because it was unsatisfied with the lack of specific information about the conflict.  (*Id*. at p. 589.)  The appellate court reversed, explaining, where "counsel maintains he must step down because of a disabling conflict, the conflict concededly involves privileged communications and the trial court admittedly accepts counsel's representations, the court may not deny the motion to withdraw." (*Id*. at p. 596.)

*Aceves* is distinguishable.  Here, unlike in *Aceves*, the trial court did not deny the motion because defense counsel failed to provide specific information about the nature of the conflict.  Instead, the court denied the motion because it concluded Palomino created the conflict as an act of gamsmanship and the breakdown of the attorney-client relationship was reconcilable. As we have discussed, the record supports the court's findings on those issues.  Under these circumstances, the court did not abuse its discretion by denying counsel's motion.

2.     ***Palomino has not shown ineffective assistance of counsel***

Palomino argues defense counsel provided ineffective assistance by failing to file a motion to sever.  As we understand his argument, Palomino contends defense counsel should have moved to sever the two unlawful possession of a firearm charges —Count 2 and Count 3—from the murder charge—Count 1.

Under either the federal or state Constitution, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result."  (*Strickland v.*

10

*Washington* (1984) 466 U.S. 668, 686; see *In re Valdez* (2010) 49 Cal.4th 715, 729.)  To establish a claim for ineffective assistance of counsel, a defendant must prove (1) that his lawyer's performance was deficient because it fell below an objective standard of reasonableness; and (2) that absent those errors, a different outcome was reasonably probable, meaning a probability sufficient to undermine confidence in the outcome. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 (*Cunningham*).)

Section 954 authorizes the joinder of charged offenses connected together in their commission or belonging to the same class of crimes.  (§ 954.)  "[B]ecause consolidation or joinder of charged offenses ordinarily promotes efficiency, that is the course of action preferred by the law."  (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220 (*Alcala*); *People v. Manriquez* (2005) 37 Cal.4th 547, 574 (*Manriquez*).)  Offenses may be joined even if they " ' "do not relate to the same transaction and were committed at different times and places . . . against different victims." ' "  (*Alcala*, at p. 1218, italics omitted.)

Where the statutory requirements for joinder are satisfied, trial courts have broad discretion to grant or deny a defendant's motion to sever.  (See *Alcala, supra*, 43 Cal.4th at p. 1221.) However, refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain charges are unusually likely to inflame the jury against the defendant; and (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges.  (*Manriquez, supra*, 37 Cal.4th at p. 574.)

Palomino has not shown defense counsel provided ineffective assistance by failing to move to sever the unlawful possession charges.  At the outset, some of Palomino's arguments seem to arise out of the mistaken belief that Count 2 concerned the nine millimeter firearm police found in a motel room on June 14, 2018.  The People did not charge Palomino with possession of the motel firearm, a point defense counsel made clear to the jury during trial.  Count 2 instead charged Palomino with unlawful possession on June 5, 2018, the day of the murder alleged in Count 1.  Palomino does not specifically argue the court was required to sever that charge from the murder charge, nor could he.  The two offenses were connected together in their commission, and the evidence supporting each would have been cross-admissible.  Accordingly, we reject any contention that counsel provided ineffective assistance by failing to move to sever Count 2 from Count 1.  (See *Cunningham, supra*, 25 Cal.4th at pp. 983–986 [trial court did not abuse its discretion in not severing unlawful firearm possession count from murder count, where same gun was used in both crimes]; *People v. Soper* (2009) 45 Cal.4th 759, 774–775 [the cross-admissibility of evidence "alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges"].)

Nor has Palomino shown counsel provided ineffective assistance in failing to move to sever Count 3 from the murder charge.[2]  Count 3 charged Palomino with unlawful possession

---

[2]    Palomino does not directly argue counsel should have moved to sever the two unlawful possession charges from one another.  Therefore, we do not consider that issue.

12

of a .45 caliber handgun on June 14, 2018, the day police arrested him.

We need not decide whether counsel should have moved to sever Count 3 because Palomino has not shown prejudice. Palomino does not contend the People's evidence supporting Count 3 was likely to inflame the jury against him. Nor does he contend the strength of the charge was significantly different from the strength of the murder charge. Instead, Palomino argues joinder of Count 3 was prejudicial because it allowed the jury to learn he could not lawfully possess a firearm, was willing to defy firearm laws, and possessed a firearm similar to the one used to kill Lopez.[3] According to Palomino, that evidence may have suggested to the jury he "was a bad actor[ ] capable of all manner of misconduct including Lopez's murder by use of a firearm."

Palomino has not shown prejudice on these grounds. Even without the joinder of Count 3, the jury would have heard overwhelming evidence that Palomino unlawfully possessed a firearm close in time to the killing. In connection with Count 2, the prosecutor played for the jury video—captured moments before the killing—showing Palomino holding an object that closely resembled a firearm. The jury also heard testimony from two police officers—each with knowledge of firearms—that the object appeared to be a handgun. The parties stipulated that Palomino could not lawfully possess a firearm at that time.

---

[3] Contrary to Palomino's contentions, the jury did not learn he was a convicted felon. The parties stipulated that Palomino could not lawfully possess a firearm, but they did not specify the reason. Neither the instructions nor the verdict forms expressed or implied Palomino was a felon.

13

The People's evidence on this issue was so strong that defense counsel conceded during closing argument that jurors might conclude Palomino was holding a handgun. Accordingly, even without the joinder of Count 3, the jury would have been presented with overwhelming evidence that Palomino could not lawfully possess a firearm, was willing to defy firearm laws, and had possessed a similar firearm as the one used to kill Lopez moments before the killing. There is no reasonable possibility the evidence of his possession of a firearm more than a week later affected the jury's verdict on the murder count.

On this record, Palomino has not shown a different outcome was reasonably probable but for counsel's failure to move to sever the charges. Accordingly, he has not shown he received ineffective assistance of counsel. (See *Cunningham, supra*, 25 Cal.4th at p. 1003.)

*Walker v. Superior Court* (1974) 37 Cal.App.3d 938, is distinguishable. In *Walker*, the court held it was an abuse of discretion not to sever an armed robbery charge from a charge for unlawful possession of a firearm allegedly committed more than 100 days after the robbery. (*Id*. at pp. 940, 943.) The court explained, because the weapons charge required proof the defendant was a convicted felon, joinder would be "more likely to result in prejudice to the defendant than mere evidence that defendant possessed a concealable weapon at some time." (*Id*. at p. 942.) Here, there was no similar risk of prejudice. At the outset, the parties stipulated Palomino could not lawfully possess a firearm. Therefore, the People did not present evidence that Palomino was a convicted felon in connection with Count 3. In any event, even if the court had severed Count 3, the jury still would have heard evidence that Palomino unlawfully

14

possessed a firearm in connection with Count 2.  Under these circumstances, Palomino cannot show the failure to sever Count 3 was prejudicial.

## DISPOSITION

We affirm the judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, Acting P. J.

We concur:

HANASONO, J.

KARNOW, J.*

---

*	Retired Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.